**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**HEATHER JORDAN** **PLAINTIFF**

**V.** **CASE NO. 4:25-CV-01200 LPR-JTK**

**SOCIAL SECURITY ADMINISTRATION** **DEFENDANT**

# RECOMMENDED DISPOSITION

## I. Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## II. Introduction:

Plaintiff, Heather Jordan ("Jordan"), filed an application for supplemental security income on April 22, 2022.[1] (Tr. at 34). In the application, she alleged that

[1] Three prior applications were denied by the Administration, with the most recent ALJ's

her disability began on November 1, 2007. *Id*. The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Jordan was not disabled. (Tr. at 34-47). The Appeals Council denied Jordan's request for review of the decision. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Jordan has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## III. <u>The Commissioner's Decision</u>:

The ALJ determined that Jordan has not engaged in substantial gainful activity since April 22, 2022, the application date.[2] (Tr. at 37). The ALJ found, at Step Two, that Jordan has the following severe impairments: inflammatory arthritis, anxiety, and trauma/stressor-related disorder. *Id*.

---

decision being upheld by the Eighth Circuit. *Jordan v. Kijakazi*, No. 22-2843, 2023 WL 2733485 (8th Cir. March 31, 2023) (*affirming Jordan v. Comm'r of Soc. Sec.*, 4:21-CV-00359-JM-ERE, 2022 WL 3999908 (E.D. Ark. July 6, 2022)).

[2] For supplemental security income cases, the relevant time-period for disability determination begins on the application date. (Tr. at 35).

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

The ALJ determined that Jordan did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.[3] (Tr. at 38-39). Next, the ALJ found that Jordan had the residual functional capacity ("RFC") to perform work at the light exertional level as defined in 20 C.F.R. § 416.967(b), with the following limitations: (1) can frequently handle and finger with the bilateral upper extremities; (2) can never climb ladders, ropes, or scaffolds; (3) must avoid more than occasional exposure to extreme cold, extreme heat, and hazards such as machinery with moving mechanical parts and unprotected heights; (4) can perform simple and repetitive tasks with detailed but not complex instructions and can use judgment to make simple work-related decision; (5) can have no contact with the public and superficial contact with coworkers (with superficial being defined as solely for the purpose of task completion) and occasional contact with supervisors; (6) can never work tandem tasks requiring cooperation with other workers to complete the tasks; (7) can have occasional interaction with the supervisor;[4] and (8) can have no more than occasional changes in the routine work setting. (Tr. at 40).

The ALJ found that Jordan, who was 35 years old on the date the application was filed, has no past relevant work (Tr. at 44-46). At Step Five, relying upon

---

[3] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

[4] This is duplicative of section (5), with no prejudicial effect.

testimony from a vocational expert ("VE"), the ALJ found that, considering Jordan's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Jordan could perform. *Id*. Therefore, the ALJ concluded that Jordan was not disabled. *Id*,

## IV. **Discussion**:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole, which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Jordan's Arguments on Appeal

Jordan contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ should have found fibromyalgia to be a severe impairment at Step Two, and that the ALJ did not properly evaluate medical opinion evidence.

The ALJ's opinion was less thorough and coherent than one would expect. There were some internal drafting errors. However, as a whole, the evidence in the

record supports the ALJ's decision.[5]

Jordan alleges that fibromyalgia was a severe impairment at Step Two.[6] The Administration has issued guidance for determining if fibromyalgia is a medically determinable impairment. In 2012, Soc. Sec. Ruling 12-02p, 2012 WL 3104869, set forth that a claimant should be found to have a medically determinable impairment of fibromyalgia if she has: (1) a history of widespread pain; (2) at least 11 (of 18) positive tender points on examination; and (3) evidence that the other disorders that could cause complained-of-symptoms were excluded. Alternatively, a claimant should be found to have the medical determinable impairment of fibromyalgia if she has: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia signs or co-occurring conditions; and (3) evidence that other disorders that could cause these repeated manifestations were excluded. *Id.* An ALJ will find a claimant has the medically determinable impairment of fibromyalgia if a physician has diagnosed fibromyalgia and provided evidence documenting the requirements

---

[5] I have reviewed the entire record and the briefs, and I adopt the ALJ's recitation of Jordan's medical history, with clarifications discussed below.

[6] Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

set forth in the SSR. SSR 12-2p, Titles II and XVI Evaluation of Fibromyalgia, 77 Fed. Reg. 43.640 (July 25, 2012). A fibromyalgia diagnosis alone does not mean that fibromyalgia is a medically determinable impairment. SSR 12-2p 2012 WL 3104869 *2.

While Jordan was diagnosed with fibromyalgia, she did not meet the above criteria. She never had the requisite 11 out of 18 tender points (the most she had was 9). (Tr. at 37, 472-475, 579). She also was diagnosed with the co-occurring condition of arthritis in her hands and feet, and she treated conservatively to manage pain from all of her conditions.[7] (Tr. at 37, 475, 543-545, 611-612, 579). At clinic visits, Jordan had grossly normal musculoskeletal examinations, with some pain and swelling. (Tr. at 40-41). Finger, hand, and foot x-rays were grossly normal. *Id*. ANA testing in 2022 was normal. *Id*. Jordan was able to do daily activities like cooking, homeschooling her kids, and going to the store.[8] (Tr. at 57-60). No doctor restricted her from working based on fibromyalgia. The ALJ discussed fibromyalgia at Step Two but found it was not severe. (Tr. at 37). Jordan has not shown that it should

---

[7] The need for only conservative treatment contradicts allegations of disabling conditions. *Thomas v. Barnhart*, 130 Fed. Appx. 62, 63 (8th Cir. 2005); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[8] Such daily activities undermine her claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

have been a severe impairment.[9]

Moreover, the RFC for light work with postural limitations incorporated any limitations based on Jordan's symptoms.[10] (Tr. at 40). This RFC also incorporated the consulting examiner's opinion that Jordan only had mild limitations in postural activities, in spite of her fibromyalgia diagnosis. (Tr. at 579-580).

Finally, Jordan avers that the ALJ did not properly evaluate the opinion of consultative psychologist, Dr. Steven Hughes, Ph.D., when she found it to be unpersuasive.[11] (Tr. at 43). Dr. Hughes evaluated Jordan in early 2023 and noted a

---

[9] Once the ALJ proceeds past Step Two, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as whole is the basis for the determinations at Steps Three and Four. See 20 C.F.R. §§ 404.1545(e), 416.945(e); Social Security Ruling 96-8p, 1996 WL 374184 (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity). *See Chismarich v. Berryhill*, 888 F.3d 978, 980-981 (8th Cir. 2018) (as long as the ALJ's decision harmonizes the Steps, each Step does not need to mirror the proceeding Steps).

[10] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater,* 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

[11] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id.* (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*,

grossly normal mental status examination except for a constricted affect. (Tr. at 43, 614-618). Dr. Hughes diagnosed Jordan with PTSD. *Id*. Although Jordan performed well on Hughes's mental testing, Dr. Hughes stated that Jordan would have moderate-to-severe limitations in mental function areas. *Id*. The only records he reviewed prior to the examination were an attorney-provided report from Jordan about her conditions. *Id*.

The ALJ stated that Dr. Huges did not document reasons for his findings, other than some issues Jordan had with recall, and he seemed to base his opinion mostly on Jordan's subjective complaints, because he only reviewed one document (her own report of symptoms). *Id.* She also stated that the opinion was inconsistent with state-agency psychiatric opinions that Jordan would have, at most, moderate mental function limitations in a work setting. (Tr. at 138-162).

Jordan routinely had normal mental status examinations.[12] (Tr. at 406-552). She did not submit records showing that she sought out specialized psychiatric care. Her clinic appointments were not typically for mental impairments. *Id.* She was able to perform multiple daily activities. (Tr. at 57-60). And the ALJ assigned a restrictive

52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

[12] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

mental function RFC, accounting for Jordan's credible psychiatric symptoms. (Tr. at 40).

The ALJ's discussion of Dr. Hughes's opinion was rather brief, and it would have helped if the ALJ had made record citations in support of her conclusion. Still, the record as a whole supported her finding that the opinion was unpersuasive.[13]

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The finding that Jordan was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 27th day of October, 2026.

UNITED STATES MAGISTRATE JUDGE

[13] An ALJ's discussion as whole can support his findings on persuasiveness. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021).